IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| REBECCA G. HISE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 5:13cv00037 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By: Hon. Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Joel C. Hoppe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on March 28, 2014, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff filed objections to the report on June 16, 2014, and this matter is now ripe for the court's consideration. For the reasons set forth herein the court will adopt the report and recommendation in full.

### I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert denied, 127 S. Ct. 3032.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert. denied, 131 S. Ct. 610 (2010); see also Midgette, 478 F.3d at 621 (quoting 28 U.S.C. § 636(b)(1)) ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the state directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations *to which objection is made.*'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010),

2

aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of [his] entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Id. at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.

The court hereby adopts the procedural history as set forth in the report and recommendation and incorporates it herein by reference. To concisely summarize the most salient portions of the procedural history, a Social Security Administrative Law Judge ("ALJ") found that Hise suffers from fibromyalgia, degenerative disc disease, carpal tunnel syndrome ("CTS"), bladder spasms/urinary disorder, pseudo-seizure disorder, gastrointestinal disorder, and obesity. R. 16. The ALJ concluded that Hise nevertheless retains the residual functional capacity ("RFC") to perform a limited range of sedentary work. R 18.

## III.

Hise makes several general objections to the report and recommendation: (1) to the findings and conclusion regarding the analysis of medical equivalency, (2) to the findings and conclusions regarding the weight given to a treating physician's assistant, (3) to the findings and conclusions

3

regarding the evaluation of her pain and other subjective symptoms, and (4) to the findings and conclusions regarding her RFC and ability to perform other work. These general objections mirror the arguments made by Hise in her motion for summary judgment. As an initial matter, to the extent that Hise is simply reiterating her previously-raised arguments about how and why the ALJ erred, the court need not address such improper objections. Hise does, however, make certain specific objections to the report and recommendation which the court must carefully review.

First, Hise argues that the report and recommendation erroneously concluded that Hise could not medically equal Listing 1.04, Disorders of the Spine, due to a lack of medical evidence of a compromise of a nerve root or the spinal cord. Hise notes that "[m]edical equivalency does not require the claimant to meet all of the listed requirements of the listed impairment – otherwise, the claimant's condition would 'meet' rather than 'equal' the listing." Pl.'s Obj., Dkt. No. 21, at 2. A review of the report and recommendation, however, makes abundantly clear that the magistrate judge did not confuse meeting a listing with medically equaling a listing.

> Hise cites no medical finding, and I can find none in her record, that establishes her fibromyalgia and back pain are at least equal in severity to this requirement. (See Pl. Br. 9–10.) On the contrary, an MRI in June 2008 showed "no abnormality" in the spinal cord and "no nerve root compression." (R. 614–15.) Images of Hise's spine in 2009 also showed at most "some mild degenerative changes." (R. 570; see also R. 573.) And lumbar spine x-rays taken in September 2010 showed "no abnormalities" and "no emergent etiology" for Hise's chronic back pain. (R. 760–61; see also R. 762, 764.) Hise's gait is generally unremarkable, even on days she complained of constant widespread "aching, sharp, burning, shooting and cramping" pain that gets worse with "any movement." (R. 519–20; but see R. 526 (noting a "slightly antalgic" gait).) And at least one emergency-room physician has noted that Hise's occasional difficulty walking is likely more psychological than physical. (R. 778.)

Report and Recommendation, Dkt. No. 20, at 11-12. Thus, the magistrate judge correctly concluded that substantial evidence supports the ALJ's conclusion that Hise did not medically equal Listing 1.04.

4

Hise further argues that the report and recommendation wrongly concluded that the Disability Determination and Transmittal Form signed by state-agency medical consultant Dr. William Amos, M.D., is a medical opinion on Listing equivalency. See Pl.'s Obj., Dkt. No. 21, at 2 ("the DDS opinion . . . relied upon by the R&R does NOT give an opinion on medical equivalency."). The court disagrees. Dr. Amos' signed opinion specifically states that he considered Listing 1.04, R. 96, but concluded that Hise is not disabled. R. 100. The report and recommendation correctly concluded that this is a sufficient medical opinion on the issue of Listing equivalency. Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011) (unpublished per curiam opinion) (quoting Social Security Ruling ("SSR") 96–6p, 1996 WL 374180, at *3) ("'The signature of a State agency medical or psychological consultant on [a Disability Determination and Transmittal Form] . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'" (alterations in original)).

Hise also argues that the ALJ failed to give proper weight to the opinion of a treating physician's assistant. Hise fails, however, to make any specific objections to the magistrate judge's report and recommendation. Indeed, Hise does not even mention the report and recommendation in this section of her objections. See Pl.'s Obj., Dkt. No. 21, at 3-4. As such, Hise has failed to make a proper, specific objection to this portion of the report and recommendation.

Next, Hise argues that the report and recommendation erroneously "adopts the presumption of the ALJ that her alleged non-compliance was without justification." Id. at 5. The report and recommendation, however, correctly discusses the applicable law and relevant facts with regard to Hise's non-compliance:

> Hise correctly notes that the ALJ should have first considered whether she had "good reasons" for her non-compliance. (Pl. Br. 13). See Manteris v. Astrue, No. 3:10-cv-34, 2011 WL 1225994, at *2–3 (citing Soc. Sec. R. 96-7p, 1996 WL 374186, at *7–8). But his failure

5

> to do so does not mean that he misapplied the law or that his credibility finding is not supported by substantial evidence. See id. ("But this imperfect analysis does not undermine the ALJ's conclusions entirely.") Moreover, one of the good reasons Hise notes—lack of transportation—is belied by the record. Dr. Marisa Christensen arranged for transportation for Hise, but she did not avail herself of this assistance. (R. 881, 883.) And despite being unable to keep multiple appointments, Hise frequented hospital emergency rooms. The ALJ's finding of habitual non-compliance is also supported by substantial evidence that Hise missed medical appointments and did not take her medications as prescribed. (See, e.g., R. 416, 419, 520, 521, 623–24, 720, 722, 740, 881, 883, 897, 924–25, 1048.)

Report and Recommendation, Dkt. No. 20, at 19-20. Elsewhere, the report and recommendation specifically notes that treating and examining doctors have commented that Hise does not take her medications as prescribed, id. at 10 (citing R. 520), and that "[a]t least four health-care providers have discharged Hise from their practices because she has ignored medical advice and failed to keep appointments." Id. (citing R. 627, 740, 881, 916-17). The report and recommendation notes in particular the opinion of Dr. Chrstensen, who observed that "Hise 'seem[ed] content to show up at the [emergency department] every couple of w[eeks] or so' when she allegedly injured herself, id. (alterations in original) (quoting R. 881), and refused to prescribe Hise narcotics due to her drug-seeking behavior. Id. (citing R. 883). The court agrees with the magistrate judge's review of this evidence and his conclusion that substantial evidence supports the ALJ's decision that Hise was non-complaint with her treatment.

Hise further asserts that the report and recommendation improperly relied on the opinion of Dr. Scagnelli, a consultative examiner. In support of this argument, Hise primarily points to medical evidence of her CTS from 2009. This evidence, however, does not contradict Dr. Scagnelli's findings in 2011. These findings are based on Dr. Scagnelli's own physical examination of Hise and indicate that, whatever the extent of Hise's CTS, it was not enough to impact her hand strength or impose manipulative limitations on reaching, handling, feeling, grasping, or fingering. R. 868, 869.

6

Indeed, elsewhere the report and recommendation notes that "[p]hysical examinations in 2008, 2009, 2010, and 2011, also consistently revealed full grip strength in both hands." Report and Recommendation, Dkt. No. 20, a 21 (citing R. 520, 526, 62, 634, 637, 689, 692, 695, 706, 711, 732, 764, 772, 778, 784, 1134.). Thus, the report and recommendation correctly concludes that the medical records, including Dr. Scagnelli's opinion, provide substantial evidence for the ALJ's decision regarding her CTS.

Finally, Hise argues that the report and recommendation improperly discounted her "seizure episodes" in determining whether the ALJ's RFC is supported by substantial evidence. Again, the report and recommendation appropriately addresses this issue:

> Hise asserts that the RFC does not account for her seizure disorder. The record documents Hise's numerous trips to the emergency room after alleged falls that she attributed to fainting or seizures. The ALJ correctly noted that CT scans and electrocardiographs ("EKG") taken after these alleged falls were normal. (R. 20.) Additionally, other objective tests and physical examinations from attending medical professionals showed few, if any, signs of injuries to corroborate the falls. The ALJ further noted that medication reduced her "seizure symptoms." (R. 20.) Even so, the ALJ apparently accounted for Hise's tendency to fall by requiring that she avoid exposure to hazardous machinery and unprotected heights. (*See* R. 18.)

Report and Recommendation, Dkt. No. 20, at 22.

### III.

In short, all of Hise's objections are without merit. The report and recommendation correctly applies the law to the relevant facts of the case and properly concludes that ALJ's decision is supported by substantial evidence. Accordingly, the court will adopt it in full. An appropriate Order will be entered this day.

7

The Clerk is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered: July 18, 2014

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge